**IT IS ORDERED as set forth below:**



Date: **July 27, 2020**

_____

**W. Homer Drake
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| IN THE MATTER OF: | : | CASE NUMBER |
|---|---|---|
| Harvey W. Dennis and Janice Myers Dennis, Debtors. | : | 98-13241-WHD |
| _____ | : | |
| Dr. Richard M. King and Mrs. Reita King, Plaintiffs, v. | : | ADVERSARY PROCEEDING NO. 19-1034-WHD |
| Harvey W. Dennis, Defendant. | : | IN PROCEEDINGS UNDER, CHAPTER 7 OF THE BANKRUPTCY CODE |

## **ORDER**

Before the Court is a Motion for Default Judgment (Doc. 6) ("Motion") filed by Richard and Reita King (the "Kings"). The Debtor has filed no pleading in opposition to the Motion. This matter constitutes a core proceeding, over which this

Court has subject matter jurisdiction.  *See* 28 U.S.C. §§ 1334; 157(b)(2).

Upon consideration of the pleadings, the Court grants the Kings' Motion.

## Procedural History

The Kings initiated this adversary proceeding on November 26, 2019. Summons was issued on the Debtor on November 27, 2019, and, on December 3, 2019, the Kings filed their Certificate of Service evidencing service of process on the Debtor.  The Debtor failed to file an answer.

On February 14, 2020, the Kings filed a Request for Entry of Default, and, on February 18, 2020, an Entry of Default pursuant to Bankruptcy Rule 7055 was entered as a result of the Debtor's failure to plead or otherwise defend his case. The Kings filed the instant Motion on March 10, 2020.

## Default Judgment Standard

A court may enter judgment against a party who fails to defend his case. Fed. R. Civ. P. 55; *see also* Fed. R. Bankr. P. 7055 (making Rule 55 applicable in adversary proceedings); *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1244 (11th Cir. 2015) (per curiam) ("When a defendant has failed to plead or defend, a district court may enter judgment by default.").  When a defendant does not respond to the plaintiff's complaint, he is "deemed to admit the plaintiff's well-pleaded allegations of fact, [but] he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Surtain*, 789 F.3d at 1245; *accord*

*Giovanno v. Fabec*, 804 F.3d 1361 (11th Cir. 2015) (per curiam); *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (per curiam). A court may only enter default judgment if the plaintiff's well-pleaded allegations of fact "actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC*, 218 F. App'x at 863; *see also Surtain*, 789 F.3d at 1245 ("[T]he standard [is] akin to that necessary to survive a motion to dismiss for failure to state a claim.").

With these guiding principles in mind, the Court turns to the facts asserted in the Complaint.

### Factual Background

On or about May 27, 1988, the Kings entered into a contract with Prestige Builders Inc., a company owned by Larry Blackwood ("Blackwood"), for the purchase and construction of home located in Marietta, Georgia. (Compl. ¶ 5, ECF No. 1). The Debtor was an employee of Prestige. (*Id.* at ¶ 6). In his employment with Prestige, the Debtor supervised the construction of the Kings' home and performed actual construction work. During construction, the Debtor failed to comply with the Cobb County Building Code in several ways, such as, failing to construct proper structural footings for the home, which resulted in structural damage. (*Id.* at ¶ 7-8).

In 1989, the Kings, due to the defects in construction, filed suit in the

Superior Court of Cobb County (the "Superior Court Action")[1] against the Debtor and Blackwood, individually, and Prestige. They asserted claims for actual and constructive fraud in the contracting to build their home, as well as in the subsequent construction. During this action, the Kings presented evidence showing that the Debtor and Blackwood knew of the defects in the construction of the Kings' residence, and that they concealed the same from the Kings. (*Id.* at ¶11-3).

The trial was held in June of 1992. As to fraud, the Superior Court charged the jury as follows:

> A person commits fraud when that person makes a misrepresentation which is intended to deceive and does deceive.
>
> Fraud may be actual or constructive. Actual fraud consists of any method by which another is deceived. Constructive fraud consists of any act done or not done which should have been done contrary to legal or equitable duty, trust, or confidence upon which another person relies to the injury of that person.
>
> Actual fraud implies moral guilt, while constructive fraud may be consistent with innocence…
>
> To prove fraud, the following elements are required: A, a false representation, B., intent to deceive, C., an intention to induce the Plaintiff to act or refrain from acting in reliance on the false representation from acting, D., justifiable reliance by the Plaintiff on the false representation, and E., damage to the Plaintiff…

---

[1] (CVA-89-107530-07)

(Compl. Ex. C, p. 2). As to punitive damages, the Superior Court charged the jury as follows:

> In order for punitive damages to be awarded, the Plaintiff must prove… that the Defendant['s] actions showed willful misconduct, malice, fraud, wantonness, or oppression that entire want of care which would raise the presumption of a conscious indifference to consequences…

(*Id.* at 4).

The jury rendered its verdict against the Debtor individually, and in favor of the Kings in the following amount: $53,750 as actual damages for fraud; $10,000 for punitive damages; and $41,433.67 for attorney fees and expenses. A corresponding judgment was subsequently entered.

The Kings then obtained a Writ of Fieri Facias ("FiFa") and recorded it on November 11, 1992.[2] (*Id.* at ¶ 16). Additionally, in or around March of 1993, the Kings deposed the Debtor in an effort to locate his assets upon which they could levy the judgment and FiFa. (*Id.* at ¶ 17).[3]

The Debtor filed his Chapter 7 petition on October 13, 1998. In his schedules, he did not list the Kings as a creditor, nor did he list their judgment against him. The Debtor received a discharge on December 17, 1998. Almost ten

---

[2] The Kings renewed the FiFa several times, with the last renewal occurring on May 10, 2013.

[3] The Kings also attempted to locate the Debtor's assets in the years 1999, 2006, and 2013, but all of these attempts were unsuccessful.

years later, on September 28, 2018, the Debtor filed a Suggestion of Bankruptcy in the Superior Court of Cobb County, in which he admitted that he did not schedule the Kings' claims in his bankruptcy case. (*Id.* Ex. D).

### The Kings' Complaint

The Complaint asserts three counts: (1) Request to File Complaint Objecting to Discharge under 523(a)(3); (2) Nondischargeability under 11 U.S.C. § 523(a)(2)(A); and (3) Nondischargeability under 11 U.S.C. § 523(a)(6). These three counts lead to the following request for relief - that the Debtor's debt to the Kings be excepted from discharge, and that the amount of the debt excepted from discharge be the amount of the Superior Court judgment, plus post-judgment interest at the legal rate under Georgia law from the date of the judgment until the debt is paid in full.

In support of this request, the Kings maintain that the Debtor intentionally withheld from the Kings the information that the home did not have all the required structural footings, which rendered the home structurally unsound. The Kings also submit that they justifiably relied on the Debtor's representation due to the Debtor's holding himself out to be knowledgeable and experienced as to the construction of the home, and that their justified reliance caused them to finalize the purchase of the home. Lastly, the Kings assert that they suffered injury due to the structural damage to the home. (*Id.*).

Additionally, the Kings maintain that, as a result of being omitted from the Debtor's schedules, they had no notice or actual knowledge of the Debtor's bankruptcy filing. They assert further that they did not become aware of the Debtor's filing until the Debtor filed the Suggestion of Bankruptcy in September of 2018. (*Id.*).

## Discussion

I.  Count I of the Kings' Complaint

The Kings filed their Complaint ten years after entry of the Debtor's discharge. Ordinarily, a creditor holding a debt of a kind listed in § 523(a)(2) or (a)(6) must file a complaint to determine dischargeability no later than 60 days after the first date set for the meeting of creditors, Fed. R. Bankr. P. 4007(c), and the failure to timely file such a complaint will result in the discharge of such a debt. *In re Petty*, 491 B.R. 554, 558 (B.A.P. 8th Cir. 2013). Notwithstanding this time limitation, Count 1 of the Complaint is a request to file a complaint objecting to discharge under 523(a)(3), which provides an exception to discharge for debts of the kind specified in § 523(a)(2), (4), or (6), that are neither listed nor scheduled in time to permit a creditor to timely file a proof of claim and a timely request for a determination of the dischargeability of such debt. 11 U.S.C. § 523(a)(3)(B).

This provision protects creditors who missed the deadline for filing §523(c) complaints due to not being properly scheduled. Importantly, a complaint under §

523(a)(3) may be filed at any time. *In re Petty*, 491 B.R. at 559. To bring a claim under this section, a movant must demonstrate that (1) the movant's claim was neither listed nor scheduled in time to file a timely objection, (2) the movant did not have notice or actual knowledge of the debtor's case in time to file a timely objection, and (3) the usual elements of nondischargability under § 523(a)(2) or (a)(6) "as the case may be," are satisfied. *In re Salvatore*, 586 B.R. 371, 377 (Bankr. D. Conn. 2018).

The Court finds that the Complaint alleges facts sufficient to satisfy § 523(a)(3)(B). The Kings' claim was not scheduled; they had no notice of the bankruptcy filing until the Debtor's filing of the Suggestion of Bankruptcy in 2018, and the debt is a debt that would otherwise have been nondischargeable under § 523(a)(2) or (a)(6), as the Court explains below. *See In re Banks,* 2011 WL 1898701, at *2 (Bankr. N.D. Ga. Mar. 11, 2011).

II.  Application of Collateral Estoppel

The Kings request that the Court apply the principle of collateral estoppel, also known as issue preclusion, to this proceeding. They maintain that the record before this Court, which consists of the Superior Court Action, the jury instruction provided in that matter, as well as the jury's verdict, establishes that the Debtor's actions constitute fraud within the meaning of § 523(a)(2)(A), thus causing "willful and malicious injury" to the Kings within the meaning of § 523(a)(6).

The doctrine of collateral estoppel applies to nondischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991). "A bankruptcy court may rely on collateral estoppel to reach conclusions about certain facts, foreclose relitigation of those facts, and then consider those facts as 'evidence of nondischargeability." *Thomas v. Loveless (In re Thomas)*, 288 Fed. Appx. 547, 548 (11th Cir. 2008). When reviewing a superior court judgment under the doctrine of collateral estoppel, a federal court must accord the judgment the same preclusive effect as it would be given under the law of the state in which the judgment was rendered. *Id*. As the final judgment was rendered by a Georgia state court, this Court must apply the collateral estoppel law of Georgia. *Caitlin Energy, Inc. v. Rachel (In re Rachel)*, 527 B.R. 529, 537 (Bankr. N.D. Ga. 2015).

Georgia law dictates that the doctrine of collateral estoppel applies when the following elements are satisfied: (1) the identity of the parties is the same; (2) the identity of the issues is the same; (3) an actual and final litigation of the issue in question occurred; (4) the adjudication was essential to the earlier action; and (5) the parties had a full and fair opportunity to litigate the issues in question. *Id.*

In this proceeding, the Court finds that the first, third, fourth, and fifth elements are clearly satisfied. The identity of the parties is the same. Further, the matters determined in the Superior Court Action were actually litigated, and the judgment entered in that proceeding constitutes a final judgment for the purposes of

collateral estoppel. *Lusk v. Williams (In re Williams)*, 282 B.R. 267, 272 (Bankr. N.D. Ga. 2002) (the general rule is that when a question of fact is put in issue by the pleadings, is submitted to the trier of fact for its determination, and is determined, that question of fact has been actually litigated). Lastly, the jury's findings and conclusions were essential to the judgment, *In re Rachel*, 527 B.R. at 537, along with the absence of any indication that the Debtor did not have the full and fair opportunity to litigate the issues in the Superior Court Action.

As for element two, whether the issues are the same, the Court compares the verdict in the Superior Court Action with the relevant provisions of § 523.

Counts II and III of the Complaint request relief pursuant to § 523(a)(2)(A) and (a)(6). Section 523(a)(2)(A) excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by…false pretenses, a false representation, or an actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A). Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

Returning to the interplay between collateral estoppel, § 523, and the verdict in the Superior Court Action, the Court finds that the issues in the Superior Court Action and in this proceeding are the same. As an initial matter, the Court observes

that the standard of proof applied in the Superior Court Action is identical to that required by § 523(a) – a preponderance of the evidence standard. (Compl. Ex. C); *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 677 (11th Cir. 1993) (applying collateral estoppel necessitates that the standard of proof in the earlier litigation must be at least as stringent as that employed in the later litigation).

Further, the verdict in the Superior Court Action is equivalent to a determination that the Kings' claim arose from actual fraud, resulting in a willful and malicious injury by the Debtor to the Kings. The jury instructions as to fraud included the language "willful misrepresentation" and "actual fraud," while the instructions for punitive damages required that the Debtor's actions constitute "willful misconduct, malice, fraud, wantonness, or oppression." Reading these instructions together, the jury necessarily found that the Debtor intentionally concealed the structural defects in the Kings' home, and that the Debtor was certain or almost certain that these defects would cause injury to the Kings. That determination leads this Court to conclude that the Kings' claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6). Consequently, as the requirements of collateral estoppel are satisfied, the Court will not reconsider this issue.

This holding is consistent with another judge's ruling in this Court. In 1992,

after entry of the judgment in the Superior Court Action and recordation of the Kings' FiFa, Blackwood, the Debtor's employer and co-defendant, filed a Chapter 7 bankruptcy case (the "Blackwood Case") before Judge Margaret Murphy.[4] The Kings then filed an adversary proceeding against Blackwood, asserting that the Superior Court judgment was nondischargeable. On the Kings' motion for summary judgment, Judge Murphy found that collateral estoppel applied to the adversary proceeding, and that Blackwood's conduct, as found by the jury in the Superior Court Action, was willful and malicious, which necessitated a determination of nondischargeability pursuant to § 523(a)(6) (the "Murphy Order").[5] (Compl. Ex. C).

Therefore, the Court concludes that the Kings' Complaint asserts well-pleaded allegations of fact, which state a substantive cause of action, and that there is sufficient basis in the pleadings to support the granting of a motion for default judgment on the Kings' request for relief pursuant to § 523(a)(3), (a)(2)(A), and (a)(6).

## Conclusion

In accordance with the foregoing, it is hereby **ORDERED** that the Kings'

---

[4] Case No. 92-78431-mhm
[5] Judge Murphy's Order also found that the punitive damages award of $10,000 was nondischargeable on the same grounds.

Motion for Default Judgment is **GRANTED.**

It is **FURTHER ORDERED** that the amount of the debt excepted from discharge is the amount stated on the Superior Court judgment, plus post-judgment interest at the legal rate under Georgia law from the date of the judgment until the debt is paid in full.

The Court will enter judgment, as appropriate, in accordance with this Order.

The Clerk is **DIRECTED** to serve this Order on all interested parties.

**END OF DOCUMENT**